### THE SAMARINDA.

(Circuit Court of Appeals, Fourth Circuit. July 24, 1917.)

#### No. 1523.

COLLISION ⬳94—OVERTAKING VESSELS—FAULT.

> A collision between an overtaking and the overtaken vessel in a channel at least 600 feet wide *held* to have been due solely to the fault of the overtaking vessel, which was much the larger, in changing her course more than was necessary at a bend in the channel, so as to converge on the course of the smaller vessel, although the two had been running side by side for two miles.

Appeal from the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Suits in admiralty for collision by C. W. Visser, master and claimant of the steamship Samarinda, and the Kingdom of the Netherlands, against the steamer Brandon, the New England Coal & Coke Company, claimant, with cross-libel against the Samarinda. Decree for respondent and cross-libelant, and libelants appeal. Affirmed.

For opinion below, see 237 Fed. 252.

R. E. Lee Marshall, of Baltimore, Md., for appellant Visser.

John Henry Skeen, of Baltimore, Md., for appellant The Kingdom of the Netherlands.

Edward E. Blodgett, of Boston, Mass. (Blodgett, Jones, Burnham & Bingham, of Boston, Mass., on brief), for appellee.

Before PRITCHARD and WOODS, Circuit Judges, and DAYTON, District Judge.

DAYTON, District Judge. A collision occurred on May 30, 1916, about 4:25 p. m., nearly opposite buoy C–1–B in the turn between Brewerton channel and Cut-Off channel in the Patapsco river, between the Dutch steamer Samarinda and the American steamer Brandon. Both ships were full loaded; the Brandon with coal, the Samarinda with grain belonging to the kingdom of the Netherlands. Both ships were badly damaged, and a loss on the cargo of the Samarinda was sustained by the owner thereof. In the court below libel and

amended libels were filed by the master and claimant of the Samarinda against the Brandon, by the New England Coal & Coke Company, sole owner of the Brandon, against the Samarinda, and by the kingdom of the Netherlands, as owner of the cargo on the Samarinda, against the Brandon. The usual order of consolidation was made, a hearing in open court had, and the matter comes here on appeal from the lower court's decree ascertaining the Samarinda to have been solely in fault.

The Brandon was much the smaller vessel. She left her anchorage first. At the entrance of the Ft. McHenry channel she was at least three-fourths of a mile ahead of the Samarinda; but the latter, being the faster vessel, gained on her until, after passing the turn buoy marking the intersection of the Ft. McHenry with the Brewerton channel, the Samarinda was not more than half a mile behind. There she gave the passing signals, which were answered by the Brandon. The Samarinda came up with the Brandon about opposite the entrance to the Sparrows Point channel, something like a mile and a half from the point where the passing signals were exchanged. Instead, however, of passing each other, the two vessels for the next 2 miles ran side by side in Brewerton channel. This channel was 600 feet wide. The Brandon was on the starboard and the Samarinda on the port side of the channel's center line, and each claims to have run within from 40 to 75 feet of the buoys on their respective sides. They must have been, therefore, from 300 to 400 feet apart. The engines of neither of the vessels were touched until shortly before the collision, when those of the Samarinda were speeded up and those of the Brandon slowed down. Under all ordinary conditions the Samarinda at the point of collision should have been more than a quarter of a mile beyond the Brandon. It is impossible to definitely determine why she was not. In our view of the case it is not necessary for us to attempt to account for this anomalous situation.

Side by side the two ships came to the Turn channel, which is 1¾ compass points more southerly than the Brewerton. Here both ships changed course, the Brandon making a very natural and obvious 1¾-point change in order to conform to the course of the channel, which kept her course still only about 50 feet from the channel buoys on her side. On the other hand, the Samarinda changed her course 2 full points, which inevitably caused her to converge to the extent of a quarter compass point upon the course of the Brandon. In the distance from buoy 3–B, where this change was made, to 1–B, where the collision occurred, this convergence reduced the distance between the ships 140 feet. At the time of the collision the ships were not to exceed 160 feet, and more likely not more than 60 feet, apart. The Samarinda had forged ahead about two-thirds of her length, or 300 feet. Then it was that the bow of the Brandon sheered in and struck the Samarinda with her anchor and the bluff of her bow about 68 feet forward of her stern. The contest in the case has waged over the inducing cause of this action on the part of the Brandon; she claiming that it was inevitable by reason of the suction force exerted over her, the smaller vessel, by the much larger one. On the other hand, the Samarinda charges it was either deliberate or the result of insufficient

rudder area, by reason of which she steered badly, and was liable to and did get out of hand and control.

In our judgment the learned judge who heard the cause below justly and rightly reached the conclusion that the fault was that of the Samarinda in changing its course, after running side by side for 2 miles with this smaller vessel, so as to converge upon and bring about a condition where she must either pass or crowd the Brandon out of her course in the channel, or run the risk of the collision which occurred.

We cannot more clearly and concisely set forth the reasons for this conclusion than has been done by the trial judge in these words:

"Doubtless the 2-point change by the pilot of the Samarinda was the one usually there made. Under ordinary circumstances, it is a convenient one. An inspection of the chart will show that such change would bring the Samarinda to the entrance of the Cut-Off channel on the starboard side of the channel, the proper position for her to take with reference to vessels which might be coming up inward bound. But the same inspection will show that there was no necessity to make such a change in course when it was made, for the buoy line on the northern and easternmost or Samarinda side of the Brewerton channel extends more than a half a mile beyond 3–B to 14 K, and there was plenty of room for the pilot of the Samarinda to keep entirely clear of the course of the Brandon. In view of the proximity of the latter vessel, the Samarinda had no right to put herself on a course which would necessarily converge upon that of the Brandon. Of course, if the Samarinda drew ahead of the Brandon sufficiently to be clear of her before she came close enough in any wise to embarrass her navigation, no harm would result; but when the Samarinda chose unnecessarily to lay her course toward that of the Brandon, she, the overtaking vessel, assumed any risk which that maneuver might occasion. In view of the way in which the two vessels had kept side by side for 2 miles or more, the pilot of the Samarinda was not justified in assuming that, before the two courses came close together, he would be well ahead of the Brandon and out of her way. It is true that the Samarinda was the faster vessel, and he not unlikely knew that fact; but, if he did know it, he should also have appreciated that something out of the ordinary was happening, when the two ships had for so long kept side by side. The widening of the channel at the time gave him an opportunity to break whatever force was keeping the two vessels together, by putting a greater distance between them. He decided to bring them close together."

The decree appealed from will be in all respects affirmed.
Affirmed.