## THE CITY OF BALTIMORE. THE BRITANNIA. BAKER-WHITELEY COAL CO. v. CHESAPEAKE S. S. CO.

(Circuit Court of Appeals, Fourth Circuit. July 5, 1922.)

No. 1964.

1. **Collision ⊚⟶94—Overtaking vessel held at fault.**

Where a steamer proceeding at a rate of speed which made it inadvisable to approach close to an overtaken vessel, collided with an overtaken tug, from which it first secured consent for a port passage, and then, because of the movement of the tug, the steamer sought consent for a starboard passage, and attempted that maneuver without securing the tug's consent, the steamer was at fault in view of Rules of Navigation, arts, 21–24 (Comp. St. §§ 7895–7898), and article 18, rule 8 (section 7892), requiring an overtaking vessel to keep out of the way of an overtaken vessel, and to secure the latter's consent before attempting to pass.

2. **Collision ⊚⟶14—Overtaken tug without licensed master held at fault.**

Where there was a collision between a tug and an overtaking vessel, and the tug was being operated in a busy harbor by a person without a master's license, in violation of Comp. St. §§ 8190, 8200, and Inspector's Rules (1916) V, § 19, and danger signals were not given by the tug, as contemplated by Rules of Navigation, art. 18, rule 8 (Comp. St. § 7892), it not being shown that the absence of a licensed master could not have affected the occurrence, the tug was at fault.

3. **Admiralty ⊚⟶118—Conclusions and findings of District Court accepted, unless plainly wrong.**

The conclusions and findings of the District Court should be accepted on appeal, unless they are plainly wrong.

Cross-Appeals from the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Libel in admiralty by the Baker-Whiteley Coal Company, owner of the steam tug Britannia, against the Chesapeake Steamship Company, claimant and owner of the steamer City of Baltimore. From a decree (275 Fed. 490) holding both ships at fault, both parties appeal. Affirmed.

H. N. Abercrombie, of Baltimore, Md., for appellant and cross appellee.

George Weems Williams, of Baltimore, Md., and Floyd Hughes, of Norfolk, Va. (L. Vernon Miller, of Baltimore, Md., on the brief), for appellee and cross appellant.

Before KNAPP, WOODS, and WADDILL, Circuit Judges.

WADDILL, Circuit Judge. These are cross-appeals from a decision of the United States District Court for the District of Maryland, in admiralty, entered on the 28th day of December, 1921. The collision, the subject of the litigation, occurred on the evening of the 7th of October, 1920, about 6:55 p. m., in the Ft. McHenry Channel, in the vicinity of Buoy 18, between the steamer City of Baltimore and the steam tug Britannia. The tug was proceeding from Jackson's Wharf, in Baltimore, down the harbor to Curtis Bay, and the Baltimore was proceeding from its pier on its outward voyage to Norfolk;

the two vessels having departed from their respective wharves in Baltimore about 6:30 p. m. The Britannia preceded the Baltimore down the inner harbor to Lazaretto Light, and then passed into the McHenry Channel. The Baltimore followed her rapidly, and overtook her at the scene of the collision, where she collided with the Britannia, striking the latter ship some 14 feet from her stern, on her starboard quarter, causing her to capsize, and from which she sustained serious damage, including the loss of two of the crew.

The Baltimore was confessedly an overtaking vessel, and was proceeding at a much higher rate of speed than the tug: Her case, briefly, is that, after passing Lazaretto Light, and when some three ship lengths away (900 feet), with the Britannia slightly on her starboard bow, she sounded a two-blast signal to her, indicating a desire to pass her to port; but no reply was received, and she gave a second signal of two blasts, to which no reply was given, and she thereupon sounded two blasts of the whistle a third time, to which the Britannia replied with two blasts of her whistle, indicating her assent to the passage to port; that she was at the time of giving the assent still on the Baltimore's starboard side and about 200 feet away; that after giving the assent to pass the Britannia was observed to sheer suddenly sharply to port, crossing ahead of the steamer and to her port side; that, upon the Britannia crossing over to the port side of the Baltimore, the latter ship gave a blast of one whistle to the former, and put her wheel to port, and directed her course to starboard; that, while the vessels were in this position, the Britannia was observed to veer suddenly, and rapidly change her course across the bow of the steamer, from port to starboard, so quickly that it was impossible for the steamer to avoid the collision; that, immediately upon observing this second change of the Britannia, the Baltimore's engines were put to full speed astern, and her helm ordered hard aport, but it was then too late to avoid the collision.

The Britannia says the first she knew of the presence of the Baltimore was that while passing down the channel, and after she had passed Red Gas Buoy No. 20, she heard a signal of two blasts from the steamer, almost directly astern of her, that proved to be the Baltimore, and which was then showing its green light, and not more than 150 feet away; that she immediately replied with two blasts of her whistle, giving her assent to the passage to port, and caused her helm to be put to port, with a view of easing off to starboard; that the City of Baltimore almost immediately blew another signal of two whistles, followed by a signal of one whistle, but before the last signal could be answered the collision occurred.

This brief statement of the claims of the two ships will show how sharply the issue of fact is drawn between them. A large number of witnesses were examined by each side, all orally, before the judge of the District Court, who, in an able and convincing opinion (275 Fed. 490) reached the conclusion that both ships were at fault for bringing about the collision, and jointly liable for the damage arising therefrom. It is from this decision that this appeal and cross-appeal is taken, with a view of reviewing and reversing the same.

Many assignments of error are made by the parties, respectively, mainly because the court did not find special facts according to their respective contentions, and they each urge that the court was in error for not placing the blame for the collision wholly upon the other, and they also insist that they should not be held jointly at fault and liable for the damages that ensued. It will not be necessary to go into detail in considering many of the assignments, as it will suffice to consider the findings, as applicable to the case of each vessel, and the conclusion reached by the court upon the whole case, the same to be reviewed in the light of the authorities properly applicable.

[1] First. Was there error in holding the Baltimore liable? We think clearly not. From whatever view that may be taken of the case, the fault of that ship seems clearly established. She was an overtaking vessel, charged specifically with the duty of securing the assent of the other vessel before attempting to pass, and at the same time with the duty of keeping clear and out of the way of the overtaken vessel. Rules of Navigation, article 18, rule 8 (Comp. St. § 7892); also articles 21, 22, 23, and 24 (sections 7895-7898), The Aureole, 113 Fed. 224, 51 C. C. A. 181; The Sif (D. C.) 181 Fed. 412; Atlas Transportation Co. v. Lee Line Steamers, 235 Fed. 492, 149 C. C. A. 38; The Samarinda, 244 Fed. 744, 157 C. C. A. 192. The Hampden (C. C. A.) 276 Fed. 399. The Baltimore was not only neglectful of her duty and clearly at fault in the respects mentioned, but she was proceeding at a rate of speed that should have admonished her not to approach too closely the overtaken vessel. Assuming the circumstances of the collision to have been as claimed by her, and that she, after securing the assent of the Britannia to the port passage, was forced, by reason of the eccentric movements of the latter's navigator, to change her signals and give one blast of her whistle, indicating her purpose to pass to starboard, then she should not have attempted that maneuver, without securing the assent of the other vessel to the same.

The court is not unmindful of the Baltimore's account of the collision, and how the same was brought about by the whimsical conduct of the Britannia's navigator, in attempting to suddenly change his course from one side and then to the other of the fair way, crossing the Baltimore's course. It is doubtless sufficient to say, in answer to this, that the District Court found the facts, as respects this portion of the Baltimore's defense, against that ship, and we may say, in passing, that we fully agree with that court in that respect. Whatever witnesses may have thought, and however conscientiously testified, still it is not only highly improbable that what is claimed would ever have occurred, or could possibly have taken place within the time allowed. Courts of admiralty have long placed their estimate upon these defenses, because of the inherent weakness apparent in them, and there seems nothing to except this case from the general class. Haney v. Balto. Steam Packet Co., 23 How. 287, 291, 293, 16 L. Ed. 562; The Richmond, The Hawarden (D. C.) 275 Fed. 970, 972, and cases cited.

[2] Second. Was the court, in the circumstances of this case, warranted in holding the Britannia in fault, and hence liable to share the damages arising from the collision? While we cannot answer this question in the affirmative with the same degree of positiveness and certainty that we do as to the Baltimore's liability, we think the court was also right in this respect. Had the fault of the Britannia been of a different kind, incident to the navigation of the tug, there would be much force in the suggestion that she should not be held liable because of the flagrant fault of the Baltimore, and the doctrine of "error in extremis" would tend to relieve her from the consequences of some of her omissions; but we cannot so hold in this case. She was being navigated by a person without a master's license, in a busy harbor, and in open violation of the law applicable to her (Comp. St. §§ 8190, 8200; Inspector's Rules [1916] V, § 19), and, in such circumstances, it is incumbent upon her to show, not only that the absence of a licensed master did not enter into the occurrence, but that it could not have done so. The Pennsylvania, 19 Wall. 125, 136, 22 L. Ed. 148; The Martello, 153 U. S. 64–74, 76, 14 Sup. Ct. 723, 38 L. Ed. 637; The Eagle Wing (D. C.) 135 Fed. 826, affirmed 162 Fed. 882, 89 C. C. A. 572 (Fourth Circuit), and certiorari denied 212 U. S. 580, 29 Sup. Ct. 689, 53 L. Ed. 659; The Walter D. Noyes (D. C.) 275 Fed. 690–694.

This, we think, the Britannia has failed to do. So far from showing that the conduct of the unlicensed officer could not have entered into the occurrence, it seems highly probable that it did do so directly. Upon the testimony, it seems quite certain that the Britannia should not have given assent to the port passage in the position in which the two vessels were at the time, and when, as she claimed, the Baltimore had run up on her without previous knowledge of her presence. Certainly sounding the danger signals, as contemplated by rule 8 of article 18, regarding the passage of vessels, would have been the prudent course to have adopted. Moreover, the failure of the tug to hear the Baltimore's signals, until three had been sounded, does not tend to strengthen the tug's claim to efficiency on its part. Nor should the failure to hear, because of the exhaust from the tug's engine, serve as an excuse for not observing the on-coming steamer, or earlier hearing its signals. The existence of such a noise ought to have made those on the tug, including especially its lookout and acting master, even more diligent.

[3] The conclusions we have reached are in accordance with the findings and holdings of the District Court, which appear to us entirely correct, and which should be accepted in solving a dispute like the one here, especially where the testimony was taken orally before the court, unless the same are plainly wrong.

The decree of the District Court will be affirmed, with costs to appellant, claimant of the Britannia.

Affirmed.