THE ADRIANA. THE VIRGINIA. EVERTS v. LATIMER.

(Circuit Court of Appeals, Fourth Circuit. June 17, 1925.)

No. 2350.

1. **Admiralty** ⬧118—Finding of fact of admiralty judge, who has seen and heard witnesses, presumed correct.

There is presumption in favor of correctness of findings of fact of admiralty judge, who has seen and heard witnesses.

2. **Collision** ⬧99—Steamer without lookout held not free from fault of collision with launch.

Omission of lookout held a serious fault, and steamer without lookout not without fault in collision with launch in harbor on clear day.

3. **Collision** ⬧106—Master of launch bound, under circumstances, to conduct navigation with reference to knowledge that steamer was about to go into its slip.

Where master of launch knew steamer was about to go into its slip, he was bound to conduct his navigation with reference to such knowledge, and should have been governed by the special circumstance and general prudential rules, and was at fault in attempting to cross the steamer's bow.

Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk; D. Lawrence Groner, Judge.

Libel in rem in admiralty by K. Everts, master and owner of the launch Adriana, against F. K. Latimer, master of the steamer Virginia. Libel dismissed, and libelant appeals. Modified and remanded.

John W. Oast, Jr., and R. Arthur Jett, Jr., both of Norfolk, Va. (Oast, Kelsey & Jett, of Norfolk, Va., on the brief), for appellant.

William Leigh Williams, of Norfolk, Va., for appellee.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

ROSE, Circuit Judge. At a little after 3 o'clock on a clear December afternoon in 1923, the steam ferryboat Virginia and the gasoline launch Adriana were in collision in the Norfolk harbor. The navigation of neither of them was embarrassed by tide, wind, or weather, or by the proximity of any other vessel. The launch was sunk, and, although it has been raised, it is said to be seriously and permanently damaged. To recover the loss suffered by its owner, its master, and its crew, there was brought against the Virginia a libel in rem, which was dismissed in the court below. The learned District Judge took the view that, until almost the moment when the vessels came together, they had been moving on parallel courses and that then without warning, the launch changed its direction in an attempt to cut across the bow of the steamer, when it was too late for the latter to avoid the resulting collision.

[1] We are fully in sympathy with the presumption in favor of the correctness of the findings of fact of an admiralty judge, who has seen and heard the witnesses. Nevertheless, bearing in mind the respective places from which the vessels concerned admittedly had come and to which they were bound, and giving due consideration to all the testimony and the diagrams of the positions of the vessels just before the collision, made by the witnesses for the steamer, we cannot escape the conviction that the two boats as they approached each other were not on parallel courses, but were upon what, except for the considerations to be hereinafter mentioned, would have been crossing courses as the latter term is legally defined. Nor do we see any sufficient reason to believe that either of the vessels made any change in its course, except that, just before the collision, and when it had already become inevitable, the launch turned its head to starboard, in order that the blow it saw impending should be a glancing rather than a direct one. Neither did anything to call the attention of the other to its existence. No signals of any kind were given by either of them. The obvious explanation is that neither had paid any attention to the other.

[2] It is quite clear that the steamer did not see the launch until it was too late to avoid striking it, and we think there is scarcely more room for doubt that the launch, until the last moment, altogether ignored the proximity of the steamer, so far as its navigation was concerned. We are persuaded that the present claim that, being on crossing courses, it knew and acted upon the assumption that it had the right of way, was an afterthought, to excuse its allowing itself to get in such a perilous position. Of course, it is highly probable that, the steamer being as large as it was, the eyes of the navigator of the launch fell upon it; but, if so, he gave no thought to its approach. The steamer had no lookout. Its quartermaster was at its wheel. His attention was, as he testified, concentrated properly enough on its steering. Its master was in the pilot house, but he had his head out the port window, looking at the slip the Virginia was about to enter, and at which it purposed to make a portside landing. Other lookout there was none, and indeed the master seems mistakenly to have supposed that he was not required in the daytime to have any. The omission was a serious fault. If the launch had been earlier seen, the collision might well have been avoided. The steamer cannot be exonerated.

[3] Nor do we think that the launch is free from blame. Its master and owner were thoroughly familiar with the harbor, and with the craft which habitually plied its waters. He knew the steamer was about to go into its slip. He was bound, under the circumstances, to conduct his navigation with reference to such knowledge. The Servia, 149 U. S. 144, 13 S. Ct. 877, 37 L. Ed. 681. He claims that the collision took place 200 or 300 yards to the seaward of the pier. We are satisfied that it happened very much closer to the shore, perhaps within 100 feet or thereabouts from the mouth of the slip. He attempted to cut across the bow of the steamer, which was within a comparatively short distance of the slip, into which he knew it was bound. The conditions being as they were, the movements of the launch should have been governed by the special circumstance and general prudential rules rather than by that dealing with vessels on crossing courses. The Servia, supra; The New York Central Tug No. 27 (D. C.) 298 F. 959, The Newark (C. C. A.) 289 F. 801; The Bronx, 250 F. 843, 163 C. C. A. 157.

It follows that the case must be remanded to the District Court, with directions to ascertain the amount of the damage resulting from the collision, and to modify its decree heretofore passed, so as to hold both vessels in fault, and to divide the damages and costs in the District Court between them. The steamer will pay the costs in this court.

Modified and remanded.