## THE MONTAUK.*

### THE BURRO.

(Circuit Court of Appeals, Second Circuit. December 7, 1925.)

Nos. 19, 20.

Collision ⬄104—Evidence held to fix place of collision and burden of explaining it on one tug.

Evidence *held* to show that collision between barge and car float, in tow of tugs that had signaled for a port to port passing in East river, occurred near Manhattan pier line, placing burden of explaining collision on tug headed up the river.

Appeals from the District Court of the United States for the Eastern District of New York.

Libels by George Slayne against the steam tug Montauk, her engines, etc., the Long Island Railroad Company, claimant, and the steam tug Burro, her engines, etc., the Cornell Steamboat Company, claimant, and by the Long Island Railroad Company against the steam tug Burro, her engines, etc., the Cornell Steamboat Company, claimant. From decrees dismissing the libel of the Long Island Railroad Company and holding the steam tug Montauk alone liable in libel by George Slayne, the Long Island Railroad Company appeals. Decrees reversed.

Both these suits arose out of a collision which admittedly occurred at night in the East River a little above the Williamsburg Bridge at a time when there was no difficulty in seeing lights and the tide was strong flood.

The tug Montauk, with a loaded car float on each side, was bound from Long Island City for a Manhattan pier considerably below the Williamsburg Bridge. The tug Burro, with a hawser tow of 12 or 13 boats in 5 tiers, was proceeding up the East River for divers points considerably above that bridge.

The collision was between the Montauk's port car float and a loaded boat "spiked on," or slightly outside, the general line of the port side of the Burro's tow at about the fourth tier. The place of collision, as we find, was so near the Rivington Street pier, Man-

*Certiorari denied 46 S. Ct. 348, 70 L. Ed. ——.

hattan, that the force of contact threw the Montauk's starboard float against that pier end, while the injured boat in Burro's tow speedily sank.

What wind there was was westerly, but there is no evidence that the wind in any way interfered with or influenced navigation.

The distance between the abutments of the Williamsburg Bridge is very nearly 1,500 feet, and that between the Manhattan and Brooklyn pier ends at Rivington street is very little less, and that from the easterly abutment of the bridge to the Rivington Street pier is barely over 450 feet.

It is admitted that the two tugs exchanged signals of one blast. The tugs themselves passed port to port with a clearance of about 200 feet. The Burro and her tow made a flotilla between 650 and 700 feet long. The length of the Montauk's car floats does not clearly appear, but it is testified that they were lashed in the usual way with "a little over three car lengths" projecting ahead of the Montauk.

With the tide under foot the Burro was making between 5 and 6 miles an hour over the land, and although the estimates of Montauk's speed by observers from the Burro are higher, we find that that tug was making against the tide rather less than four miles an hour.

The court below found the Montauk solely at fault, and accordingly sustained the libel of Slayne (the boat owner) and dismissed that of the Long Island Railroad (owner of the car float and Montauk), whereupon the Railroad Company appealed.

Burlingham, Veeder, Masten & Fearey, of New York City (Chauncey I. Clark and J. Dudley Eggleston, both of New York City, of counsel), for appellant.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (Robert S. Erskine and Henry P. Elliott, both of New York City, of counsel), for the Burro.

Macklin, Brown & Van Wyck, of New York City, for appellee Slayne.

Before HOUGH, HAND, and MACK, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). The vital inquiries in this case are we think two: (1) What was the place of collision? (2) How does the story told for the Burro account for collision at that place?

The fact that Montauk's starboard car float struck the end of Rivington Street pier almost immediately after collision, the fact

that the usual—indeed, almost invariable—course of car float tows down the East River on the flood tide is very close to the Manhattan pier line, and the direct testimony on the subject, unite to convince us that Montauk, just before collision, was pursuing the course sworn to by her witnesses, viz. about 100 feet outside the Manhattan pier line.

The story of the Burro's master, supported by his deckhand and bargees, is plain enough. On approaching Corlears Hook the tow was swept by the flood tide toward Brooklyn, but was straightened up so that, with his tow well aligned behind him, the Burro's master was just about to pass under the middle of the bridge when he saw the Montauk's lights off about Eleventh street. He blew one blast and proceeded up midstream, whereupon collision occurred off Rivington street; and Burro's witnesses with rather singular unanimity in detail agree that such collision occurred about 700 feet from the Manhattan shore; in other words, in midstream.

Now from Eleventh to Rivington streets is considerably more than half a mile, but from the bridge to Rivington is about 450 feet. Yet according to this story the Burro, which was traveling nearly three feet to Montauk's two, was unable to get above Rivington street before Montauk had traveled more than half a mile and run into her tow. Distances on the water and at night are proverbially deceptive, but the experienced men who testified in this case were pursuing the usual harbor method of judging distances by streets and piers, and not by water guesses.

Holding it to be clearly proved that contact occurred close to Rivington Street pier end, there is no method of reconciling Burro's story with proven facts, and telling the story impugns either the integrity or intelligence of him that tells it.

The successful argument below (as shown by colloquies with the court) was that, since there was a clearance of at least 200 feet between the tugs as they passed, and the set of the tide at Corlears Hook is toward Long Island, it was impossible for the Burro's tow to swing toward Manhattan, so as to produce collision at the place sworn to by Montauk's witnesses, and where we have found that collision occurred. This argument is appellee's main reliance, and it is asserted in varying forms that the tow *could* not swing over toward the Manhattan shore on account of the tide set.

Undoubtedly *at* Corlears Hook the flood tide sets toward Long Island. One need only look at the chart to see why, viz.: The flood tide is caromed off from the downstream side of the Hook and toward Brooklyn, just as a billiard ball bounces from its cushion. But that does not mean that the flood tide is setting toward Brooklyn above the Hook, nor indeed is the tide set pronounced even in midstream. This is shown by Burro's testimony, for it is positively sworn that, although the tide swept the tow toward Brooklyn on reaching the Hook, it was straight behind the tow in midstream under the bridge. Above the bridge, so far as we gather facts from evidence, the flood tide runs fairly true. Accordingly we perceive no reason why above the bridge any swing of the tow which put the strength of the flood tide on the starboard side would not send the boats toward Manhattan.

We incline to believe this to be the explanation of accident; but it is not necessary to affirm this as the exact truth. It is enough that a single whistle signal had been blown; it was the duty of both tugs to keep themselves and their tows in such shape as to insure a port to port passage. Admittedly this was not done, and, if the place of collision was where we have found it, Montauk did not fail in her duty; therefore Burro must have failed. The burden of explanation is on her and has not been borne.

Decrees reversed, with costs.