THE ELLENVILLE. THE MANOR. THE MONTROSE. WATHEN v. WESTMORE-LAND COAL CO. et al.

No. 2925.

Circuit Court of Appeals, Fourth Circuit.
April 8, 1930.

John H. Skeen, of Baltimore, Md., for appellant.

George Weems Williams, of Baltimore, Md. (L. Vernon Miller and Marbury, Gosnell & Williams, all of Baltimore, Md., on the brief), for appellee Eastern Transp. Co.

Acker, Manning & Brown, of Philadelphia, Pa., and Edgar T. Fell, of Baltimore, Md., for appellee Westmoreland Coal Co.

Before PARKER and NORTHCOTT, Circuit Judges, and HAYES, District Judge.

HAYES, District Judge.

This is a collision case, and involves the liability for losses sustained by the Westmoreland Coal Company, owner of the barge Manor, anchored in the Delaware breakwater, when the barge Ellenville, owned by Robert B. Wathen, drifted against and injured the Manor. The Manor sustained damages in the sum of $1,500, and the Ellenville about the same amount. The District Court found the Ellenville solely at fault. There was no charge of fault against the Manor.

The tug Montrose left Norfolk, Va., on June 29, 1927, bound up coast for New York, towing the barges Aransas, Carroll, and Ellenville, all loaded, in the order named, arranged tandem, with 200 fathoms of hawser between each barge and 225 fathoms from the tug to the first barge; the total length of the tow being more than three-quarters of a mile. On the afternoon of June 30th, when about off Five Fathom Bank Light Ship, the Ellenville gave a signal of distress. The tug undertook to take the tow into Delaware breakwater, and passed into the breakwater about, or just after dark. There were two or perhaps three barges already at anchor in the harbor, one of which was the Manor, with which the Ellenville collided after having been cast off by the tug. The Manor was 1,200 yards west of the breakwater and the vessel nearest the tow. The tug Montrose was owned by the Eastern Transportation Company, which was impleaded under the fifty-sixth Admiralty Rule.

There was conflicting evidence in the court below. With the exception of the deposition of Olav Nielson, master of the barge Manor, the witnesses to the transaction appeared in person before the court and testified. Among the witnesses were Brailsford, deck hand on the Manor, Capt. Slover, captain of the Ellenville, Wheatley, bargeman on the Absecon, anchored near the Manor, Capt. Walton, master of the tug Montrose, Capt. Castongay, captain of the Aransas, and Capt. Hartman, master of the Carroll, all of whom were eyewitnesses to most of the events occurring in the harbor. The evidence clearly establishes the following facts:

Just after the tow had pulled inside the breakwater, and when the head barge Aransas was abreast of the Manor, the tug blew to let go of the stern barge, the tug having given timely signal to steam up before entering the breakwater, and the Ellenville answered. Signals were then given for the Carroll to let go, and it assented. By this time the head

barge was nearest the Manor, and signals were then given to let go the tug's hawser, which was done. The barges Aransas and Carroll anchored safely, but the stern barge, which we find from the preponderance of the evidence, was farther from the Manor than the other two barges, failed to let go her anchors after she had been cut loose from the Carroll and she drifted against the Manor some time afterward and caused the damage the amount of which is not in dispute. It was a clear summer night with a light wind and a light flood tide. The Ellenville was equipped with two anchors.

The collision occurred some time after 8:30 p. m. The tug returned to the Ellenville something like an hour afterwards to inquire about the cause of the distress signal which occasioned the tug to pull into the harbor. The captain of the Ellenville told the captain of the tug that the barge was hauling 6 feet of water. They worked until about 12 o'clock to free the barge of water. Then the captain of the Ellenville said that he had an accident with the anchored barge that evening; that he was in the pilot house at the wheel and his donkeyman tried to get the port anchor overboard and did not let go of the forward leash. He said they went to the starboard to get the starboard anchor overboard when the riding pawl fell down on the chain. The captain of the Ellenville further said, "Captain this is something you have not got to worry about, because it was not your fault, it was simply a case where I could not release my anchor and we simply drifted and drifted until we collided."

The captain of the Ellenville made about the same statement to the captain of the Manor the next morning. The captain of the Ellenville, after practically admitting making the statement, tried, as a witness, to explain that the barge Carroll did not release the hawser when the signal was given. We are not convinced by this explanation. It is apparently an afterthought.

The District Court found the damage to the Manor was caused solely by the failure of the barge Ellenville, after the hawser was released, to cast anchor, and that such failure was the proximate cause of the injury, and that the tug and the other barges were free from fault.

■ The principle that the findings of fact by a court of admiralty on conflicting testimony of witnesses examined in open court will not be reversed on appeal unless clearly erroneous is too well settled to need citation of authorities. Dempsey v. Eastern Transportation Co. (C. C. A.) 275 F. 350, 352; Lewis v. Stone (C. C. A.) 27 F.(2d) 72; The Adriana (C. C. A.) 6 F.(2d) 860; Southern Pacific Co. v. Haglund, 277 U. S. 304, 48 S. Ct. 510, 72 L. Ed. 892.

■ The trial judge saw and heard these witnesses, with the aid of a chart and blackboard, explain their testimony. He could observe their candor or lack of it, and could formulate more easily than the appellate court an accurate conclusion on the facts. There is a strong presumption of the correctness of his findings. Southern Towing Co. v. Egan (C. C. A. 4th Circuit) 184 F. 275, 278.

■ Where the trial judge decides the case on oral evidence, his conclusion should be accepted on appeal unless clearly wrong. The City of Baltimore (C. C. A.) 282 F. 490, 493.

Apart from these established principles, a careful examination of the evidence in the record fully convinces us that the collision was proximately caused by the barge Ellenville and its crew in failing to cast anchor. There was ample room for fifty vessels to anchor; at most three barges were anchored in the harbor; yet the Ellenville, cast off at the greatest distance from the Manor of any of the barges in the tow, was the only vessel to encounter trouble. The captain surely told the truth that night when he said it was not the tug's fault but the failure of the Ellenville to cast anchor which caused the collision.

■ A towing boat is only required to exercise reasonable care, caution, and maritime skill under similar circumstances, and, if such care, caution, and skill are exercised by those charged with her management, no liability attaches to the tug for injury to or caused by the barge in tow. Southern Towing Company v. Egan, supra.

The captain of the tug was an experienced seaman. He was thoroughly familiar with this harbor. He had every reason to believe the Ellenville would anchor safely. He could not anticipate the failure to let go her anchor. Appellant insists that he knew the barge was disabled and that this called for greater care. But there was nothing to indicate any disability in respect to anchoring. The contrary appears, for the barge signaled her readiness to anchor, and she was undoubtedly in a suitable place to anchor and would have anchored if she had let go her anchors.

It is urged by appellant that the tug should be held liable, at least in part, as con-

tributing to the injury, because the tug knew the barge was disabled, cast her off after dark in close proximity of the anchored barges and in a heavy flood tide. We do not think the evidence warrants these conclusions. Our attention is called to The Alabama (C. C. A.) 126 F. 332; Calzavaro v. Planet Steamship Corporation (C. C. A.) 31 F.(2d) 885; The Fred B. Dalzell, Jr. (C. C. A.) 1 F.(2d) 259, 263; Bronx Barge Corporation v. Connelly Transportation Corporation (C. C. A.) 35 F.(2d) 294. Those cases are clearly distinguishable from the instant case. The Ellenville was not in tow when the collision occurred. She was in the harbor and had ample time to anchor. She was not cast off in the path of a moving vessel, nor was she cast off in such way as was reasonably calculated, under existing conditions, to produce injury to herself or other vessels.

In The Panther (C. C. A.) 5 F.(2d) 64, where the captain of the tug was negligent in permitting barge to drift while landing other barges when the tide was flood, the barge was held solely at fault, as it was the sole proximate cause.

Failure to equip boats with anchors and to use them was held the sole proximate cause of the injury in The Sunnyside (C. C. A.) 251 F. 271.

"It is not a case of concurrent fault on the part of the tug and the barge. The fault of the barge was not a contributing cause. It was, under the circumstances, the efficient and proximate cause of the damages claimed. The evidence shows that Capt. Printz had ample opportunity, after learning that his barge was adrift, to anchor her." The M. E. Luckenbach (D. C.) 200 F. 630, 637, affirmed in (C. C. A.) 214 F. 571.

"A tug has also the right to assume that the tow will carry a competent and sufficient crew, and is not liable for dangers, either from the unseaworthy condition of the barge or for the failure of its owners to properly man and equip the same." Southgate v. Eastern Transportation Co., 21 F.(2d) 47, 49 (C. C. A. 4th Circuit).

In the last case, the unseaworthiness and lack of a sufficient crew and prudent navigator constituted the proximate and efficient cause of the disaster.

The decree of the lower court is affirmed, at the cost of the appellant.

Affirmed.