## GREAT LAKES DREDGE & DOCK CO. v. THE SANTIAGO et al.

### SANTIAGO S. S. CO., Limited, v. UNITED STATES.

No. 255.

Circuit Court of Appeals, Second Circuit.

April 23, 1946.

Kirlin, Campbell, Hickox & Keating, of New York City (Robert S. Erskine, of New York City, of counsel), for Santiago Steamship Co., Ltd.

J. Vincent Keogh, of New York City (Nicholas J. Healy, 3rd, and Frank P. Cox, both of New York City, of counsel), for the United States.

Hagen & Eidenbach, of New York City (Charles W. Hagen and Nelson J. Johnson, both of New York City, of counsel), for Great Lakes Dredge & Dock Co.

Before, L. HAND, SWAN, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

The United States on this appeal somewhat half-heartedly contends that the sinking of the dynamite scow and the damage to the drill-boat resulted solely from the negligence of the Santiago. In the alternative, and more vigorously, it contends that the Santiago was also at fault. We cannot agree with either contention.

The trial judge held that the facts showed a crossing situation. The government on this appeal suggests that it was an overtaking situation. We think it was neither; not a crossing case, because the Dupont was not bound for a pier on the Manhattan side of the river; not an overtaking case,[1] because the Dupont had not, before the accident, begun to navigate on a steady course but was still maneuvering preparatory to doing so.[2] Accordingly, none of the Rules applied. This was a "special circumstances" case, i. e., one in which prudent navigation, without regard to any Rule, was required.[3]

We find it difficult to conceive of more imprudent navigation than that of the Dupont.[4] At a needlessly high rate of speed she dashed into a well-trafficked river and without possible excuse crowded upon the course of the Santiago. It was simply great good luck that a major catastrophe did not ensue when the Santiago struck the dynamite scow. We cannot ignore the trial judge's impression that Kelly, the destroyer's pilot, thought the destroyer "was entitled to proceed * * * pretty much as she chose, and that other craft of civilian status must govern themselves accordingly." The Navy does not, in that sense, rule the waves.[5] No adequate explanation was given for sounding the two blasts; Kelly said it was "merely a courtesy signal of intention." The judge found that no persons on the Santiago heard the two blasts. But if they had, the Santiago could not have been expected to understand the "intention" which this "courtesy" signalized.

The judge found that a boatswain and a sailor on the forecastle head "were in a position to act as lookouts." The government asserts that this finding is not supported by the evidence. But even if we assumed that the Santiago had no lookouts, we would not hold her at fault;[6] for what lookouts would have seen and reported would not reasonably have suggested, in sufficient time, that the destroyer planned to cross the Santiago's bow. Assuming that it was clear to the Santiago

---

[1] See Article 18, Rule VIII, 33 U.S.C.A. § 203, rule VIII: "When steam vessels are running in the same direction," etc.

[2] The William A. Jamison, 2 Cir., 241 F. 950, 951; The Washington, 2 Cir., 241 F. 952, 953; The Transfer No. 17, 2 Cir., 254 F. 673, 674; The James A. McKenna, 2 Cir., 25 F.2d 639, 640; The Cherokee, 2 Cir., 70 F.2d 316, 317; The Transfer No. 18, 2 Cir., 74 F.2d 256, 257; cf. Commonwealth & Dominion Line v. United States, 2 Cir., 20 F.2d 729, 731.

[3] Articles 27 and 29, 33 U.S.C.A. §§ 212 and 221; The Servia, 149 U.S. 144, 156, 13 S.Ct. 817, 37 L.Ed. 681, and the cases cited in the preceding note.

[4] Its gross negligence is evident even to a landlubber like the writer of this opinion. His far more experienced colleagues are in entire accord.

[5] Ocean S. S. Co. of Savannah v. United States, 2 Cir., 38 F.2d 782, 786; The Silver Palm, 2 Cir., 94 F.2d 754, 760; New England Maritime Co. v. United States, D.C.Mass., 55 F.2d 674, 677.

[6] In the light of Art. 29, 33 U.S.C.A. § 221, the doctrine of The Pennsylvania, 19 Wall. 125, 22 L.Ed. 148, applies to a neglect to keep a proper lookout. But here that neglect (if there was one) could not possibly have contributed to the accident. Southern Pacific Co. v. Haglund, 277 U.S. 304, 309, 48 S.Ct. 510, 72 L.Ed. 892; The Blue Jacket, 144 U.S. 371, 390, 12 S.Ct. 711, 36 L.Ed. 469; Harbor Oil Transport Co. of Connecticut v. The Plattsburgh Socony, 2 Cir., 151 F.2d 708, 709; Puratich v. United States, 9 Cir., 126 F.2d 914, 916.

that the Dupont meant to head downstream, the Santiago would justifiably believe either that the Dupont would be directed to the left of the Santiago,[7] or would follow her, instead of trying to cross her, since that was a wholly improper undertaking. The Santiago was not obliged to anticipate improper navigation.[8] Once the intention of the Dupont became manifest to the Santiago, the latter used all due care.

Affirmed

---

[7] It is not entirely clear from the findings how close the Santiago was to the center of the channel and whether or not, therefore, the Dupont could have proceeded to the port of the Santiago on the right half of the channel. But, if the Dupont could not have so proceeded, then she should certainly not have attempted to cross.

On our view of the case, there is no need to consider whether the Dupont is liable under the doctrine of The Pennsylvania, supra. But, as the question was raised in the briefs, we take this occasion to say that we were in error in suggesting in The Nanuet, 2 Cir., 55 F.2d 222, 223, that a vessel need not prove that her fault "could not have contributed to a collision between other boats, when she herself collides with neither." See Richelieu & O. Navigation Co. v. Boston Marine Ins. Co., 136 U.S. 408, 10 S.Ct. 934, 34 L.Ed. 398; The Denali, 9 Cir., 105 F. 2d 413; cf. The Aakre, 2 Cir., 122 F.2d 469, 474.

[8] Cf. Puratich v. United States, supra; Larsen v. Portland California S. S. Co., 9 Cir., 66 F.2d 326, 330; Long Island R. Co. v. Killien, 2 Cir., 67 F. 365, 368.