# THE WILMINGTON.

# THE ANNAPOLIS.

# THE CHEWINK.

# P. DOUGHERTY CO. v. UNITED STATES.

# UNITED STATES v. P. DOUGHERTY CO.

### Nos. 16811, 17018.

District Court, E. D. New York.

Aug. 15, 1946.

Foley & Martin and Christopher Heckman and Louis J. Lawrence, all of New York City, for P. Dougherty Co.

J. Vincent Keogh, U. S. Atty., Nicholas Healy, 3d and Frank Cox, all of New York City, for United States, U. S. S. Chewink.

INCH, District Judge.

The above two suits are cross-suits in the admiralty. The P. Dougherty Company owns the barges Wilmington and Annapolis and has sued the United States on the ground that the Government vessel Chewink negligently damaged them. The United States, as owner of this U. S. S. Chewink, sues the Dougherty Company for damages sustained by the Chewink because of alleged negligence on the part of the tug Dunmore, owned by the Dougherty Company, which had the above barges in tow. The two suits were duly tried together and both libellants contend that the collision between the barges and the Chewink was due solely to the other's negligence.

Before deciding the issue presented as to negligence, certain facts should be stated.

Dougherty claims that the Chewink failed to display anchor lights and also improperly displayed running lights and that this neglect was the sole proximate cause of the collision. Other faults on the part of the Chewink are indicated, such as improper place occupied by the Chewink, the length of time she had occupied such place, etc. But the main argument for Dougherty is that its tug captain was misled, in spite of prudent navigation on the tug's part, by negligence in regard to the above lights on the part of the Chewink.

The Chewink, on the other hand, claims the collision was caused solely by the Dunmore's careless navigation, both on the tug's part and the various captains of the barges, and, incidently, criticises the length of the tow as being too long and unwieldly.

The accident happened in about the middle of Long Island Sound, somewhat to the westward of Plum Island, near the extremity of Long Island.

The Chewink is a submarine rescue vessel equipped with special apparatus. She is somewhat small, 185 feet long, 30 feet deep. During the day preceding the collision she had been duly working on what had been reported to be a wreck of an enemy submarine. She was anchored and had been using spuds. Diving continued until it grew dark in the evening of March 27, 1943, when work was stopped. It was decided to remain anchored on the spot until daylight the next day for certain reasons. There was approximately three miles of navigable water on either side of her which gave more than ample room for any ship to pass her. She was, as was said in Lind v. United States, 2 Cir., 156 F.2d 231, 232,

in regard to another vessel, "as brightly lighted as a Christmas tree; there were lights all over her".

The tug Dunmore, although several miles away from the Chewink, was approaching her general direction, proceeding westerly in the Sound. There is no question but that the Chewink was anchored and lying still. Nor, in my opinion, did she offer any obstruction to traffic up and down the stream in the course of reasonable and proper navigation. Nevertheless, the navigation of the tug Dunmore was such that the tug passed on one side of the Chewink while the barges Annapolis and Wilmington collided with the Chewink and the third barge in tow passed safely.

The weather that night was reasonably fair and visibility sufficient. The wind was from the northwest, setting on the starboard side of the barges. The tug and her tow was coming down with the tide at about five miles and counsel for the Dunmore state, in their brief, "passage to southward of the Chewink could have been easily accomplished had the Dunmore known she was at anchor". But they also argue that the Dunmore navigators thought that the Chewink was under way.

At the time Dunmore was approaching the Chewink, she was in charge of the mate who was in the wheelhouse. Another seaman was at the wheel and the captain of the tug was asleep. Goodwin, the mate, had seen the lights of the Chewink over a mile and one-half away. He was approaching nearly straight on towards the Chewink which was slightly on his port bow. The mate of the Dunmore continued until he was quite near the Chewink and then made a sudden change of course across the bow of the Chewink which brought the hawser barge Annapolis, which was about a quarter of a mile astern, into collision with the Chewink's bow. The captain of the Dunmore was not called until the Dunmore had passed the Chewink. Then the Wilmington following, collided with the Chewink's starboard side head-on and the third barge, Chehaw, passed safely by the Chewink. No orders had been previously given by the mate in charge of the Dunmore to the captains of the barges.

Apparently there had been no lookout on the Dunmore, but this was not the reason for the collision, as the mate at all times had had the Chewink in view and was approaching her with the tide under foot and he should have, by the exercise of reasonable care, been able to tell in ample time that the Chewink was not moving but was anchored.

In my opinion, he was not mislead in this regard as sought by much of the testimony now offered as to lights. There was plenty of room for the Dunmore to have passed either to the left or the right of the Chewink. In fact if the mate had not made this last minute attempt to cross the bow of the Chewink and kept his tow in line there might have been no collision for even as it was the last barge passed the Chewink safely. The Montauk, 2 Cir., 9 F.2d 882, certiorari denied, 270 U.S. 647, 46 S.Ct. 348, 70 L.Ed. 779.

I find no fault on the part of the captains of the barges under the circumstances here.

The Dunmore is a steamtug, 1000 horse power, 142 feet in length. She was towing in tandem formation three light seagoing barges, the Annapolis 228 feet long, the Wilmington 228 feet long, and the Chehaw 181 feet long, in the order named. All three barges were ship-shaped, equipped with rudders and captains. The hawser from the tug to the first barge, Annapolis, was approximately 1300 feet, the hawser from the Annapolis to the Wilmington, the next barge, was approximately 1200 feet and the hawser from the Wilmington to the Chehaw, the last barge, was also 1200 feet, so that the total length of the flotilla was almost a mile long.

There has been some criticism of such a long tow, but I do not find that it was important in this case.

While the Chewink was at anchor, there were men constantly on watch. She was able to see the Dunmore over a mile away. When the tug had approached to about a fifth of a mile away, she cut across the Chewink's bow passing her by about approximately 300 feet, but the barges following a long distance behind her, could

836

not so follow the tug, and collided with the Chewink.

To be sure the rules as to lights on an anchored vessel, such as the Chewink, were technically violated and such violation is and cannot be overlooked simply because of war conditions if it caused the collision. Great Lakes Dredge & Dock Co. v. The Santiago, 2 Cir., 155 F.2d 148. But I find from the evidence that such technical violation as to anchor lights had no effect in changing the navigation of the Dunmore and that beyond a reasonable doubt such technical violation did not contribute to the collision.

The Chewink was anchored and brilliantly lighted and did not change her bearing. Her running lights were not lit and reasonable observation of her at such a distance by the mate of the Dunmore would plainly have shown him the necessity for, giving her ample room in which to pass. I do not see how the Chewink, anchored, brightly lighted, so that she could be seen almost two miles away, could do anything but wait and expect prudent navigation on the part of the oncoming tug and tow, with miles of safe water on either side of her, not to mention the sudden change of course on the part of the tug shortly before the collision.

In my opinion, the fault that caused the collision was entirely that of the tug Dunmore, and I do not think this is a case where the damages should be one of comparative negligence.

I am not unaware of the authorities that hold that where a moving tug and tow causes its barges to collide with a vessel at anchor in a proper place, there may be a difference in regard to the degree of care required for exoneration. The Virginia Ehrman 97 U.S. 309, 24 L.Ed. 890; The Oregon, 158 U.S. 186, 15 S.Ct. 804, 39 L.Ed. 943; The Orion (Dahlmer v. Bay State Dredging & Contracting Co.), 1 Cir., 26 F.2d 603. The Yucatan, 9 Cir., 226 F. 437.

However, assuming that the faults of such anchored vessel have been urged, and that only reasonable care in navigation was required by those in charge of the tug Dunmore, nevertheless, I think that the evidence shows that the collision was due solely to negligence on the part of the Dunmore.

Accordingly, the libel of Dougherty is dismissed. The United States of America is entitled to a decree for such damages as may hereafter be shown.

Submit findings of fact and conclusions of law.