### THE HOLLY PARK.

### THE FREDERICK W. UNDERWOOD.

#### No. 121.

Circuit Court of Appeals, Second Circuit.
March 3, 1930.

Bigham, Englar, Jones & Houston, of New York City (Leonard J. Matteson and Willard M. L. Robinson, both of New York City, of counsel), for appellant Baltimore & O. R. Co.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (J. Harvey Turnure and Eugene F. Gilligan, both of New York City, of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge. At about six-forty p. m. on December 31, 1926, the steam tug Frederick W. Underwood and the tramp steamer Holly Park were in collision in the upper bay in the harbor of New York. Each sued the other, and the cases were heard together.

The Underwood, with a loaded car float made fast on either side, left Pier 21 East River at six o'clock p. m. that afternoon, bound for St. George, S. I. She was about one hundred twenty-five feet in length having her pilot house fifty feet from the stern. On her starboard was a wooden two-track float about one hundred fifty feet long loaded with eight cars. Its stern was made fast six feet forward of that of the tug. Her port float was steel; about two hundred feet long with a load of twelve cars and its stern extended about ten feet aft of that of the Underwood. The regulation lights were showing. It was rather dark and hazy, but the visibility was estimated by witnesses at from one thousand to two thousand feet. The tide was at flood with an adverse current of about one knot.

The Holly Park was a steel ship three hundred twenty-five feet long with a forty-eight foot beam and tonnage of three thousand two hundred seven gross, two thousand fifty-three net. She left her pier at the foot of Eleventh Street Hoboken about five forty-five that afternoon, and, after being maneuvered into position opposite her pier, started down the bay at about six-fifteen p. m. bound out to sea. She was in charge of a Sandy Hook pilot. She was capable of making from seven to eight knots an hour, and was under full speed ahead until just before the collision. When the Underwood was abreast of Black Tom Channel, her only lookout, who was a mate stationed forward on top of one of the cars on her starboard float, saw a hawser tow coming out of Black Tom on a course across the bow of the Underwood. The Underwood then stopped her engines to permit the hawser tow to, and it did, pass safely. At about the time the Underwood stopped her engines, the steam lighter Potomac, bound down stream, overtook and passed her somewhat to the westward on a parallel course. When the Potomac was about three hundred feet ahead, her captain noticed the Holly Park approaching dangerously close to the Underwood's stern and blew a danger signal. The Underwood immediately blew an alarm and the Holly Park at once reversed her engines and let go her port anchor. This checked but failed to overcome her headway and within a minute or two her stem struck the aft starboard side of the Underwood's starboard float. After a casual inspection had revealed that the damage would not prevent her doing so, the Underwood proceeded with her tow to her destination, and the Holly Park resumed her voyage.

The Holly Park claimed and introduced evidence tending to show that shortly before the collision the Underwood, having overtaken and passed her, turned sharply to westward without warning across her bow. The Underwood claimed and introduced evidence strongly indicating that she was at all times ahead of the Holly Park which failed to keep a safe distance behind and ran up on her when she stopped her engines to allow the hawser tow to cross her bow. The evidence on this point is contradictory and impossible to reconcile. The District Court found that the Holly Park was the overtaking vessel. A careful consideration of the testimony leads us to the conclusion that this was the fact, and we accordingly accept such finding. Englis et al. v. Davis (C. C. A.) 287 F. 136; The Hampden (C. C. A.) 276 F. 399; The City of Baltimore (C. C. A.) 282 F. 490.

With this question of fact resolved in favor of the Underwood, her liability will properly turn on whether she was at fault for not having a lookout aft and for not signaling the Holly Park before she changed her speed by stopping her engines. However much at variance the authorities may be, we have lately decided in The Industry, 29 F. (2d) 29, 30, that an overtaking vessel was "obliged to hold herself in check against unexpected changes of course, and be prepared to meet them, until by the consent of the vessel ahead she gets assurance that it is convenient for her to hold on." That opinion needs no amplification to sustain the position taken, and we now find it no extension of the principle to say that it applies exactly the same to a change in speed as to a change in course. The overtaking vessel is bound to keep such a distance behind that she can avoid a collision while permitting the vessel ahead to have freedom of choice in her navigation both in respect to speed and changes of course. No duty is imposed on the overtaken vessel to maintain her speed for the benefit

of the ship behind until she on signal assents to a passing and its attendant close approach or is advised that the overtaking vessel has come into a place of danger from which she cannot avert a collision without the assistance of the vessel ahead. As the Underwood had no signal from the Holly Park or timely knowledge of her proximity, neither of these conditions affects this case and leaves the Underwood owing the Holly Park no duty to maintain a lookout aft. The M. J. Rudolph (C. C. A.) 292 F. 740–743.

Decree modified to exonerate the Underwood and hold the Holly Park solely at fault.