JjSULLIVAN, Judge.
This suit involves claims for damages resulting from a boating accident which occurred on May 28, 1993. Plaintiff, Chet Williams, appeals from the trial court’s judgment which dismissed his suit for damages against defendant, Shell Western E & P, Incorporated[2] (Shell). In his petition, Williams alleged that, as a result of the negligent and careless operation of the Shell-owned MTV Mercedes, his sixteen-foot skiff capsized and sank in the Atchafalaya Intra-coastal Waterway. He sought recovery for property damage, lost profits and personal injury.
*383 lain Ms assignments of error and argument on appeal, plaintiff focuses on the fact that the trial court applied one “Inland Rule of the Road,” Rule 13 [33 U.S.C. § 2013] dealing with overtaking vessels, instead of recognizing the “special circumstances of the ease” as provided for in 33 U.S.C. 2002(a). Additionally, Williams specifies as error the trial judge’s finding that he was solely at fault and her failure to award damages.
We have reviewed the record in its entirety and, as a result, conclude that the trial court did not err in dismissing Williams’ suit. Accordingly, we affirm.
The trial judge’s application of 33 U.S.C. 2013 to tMs ease was based upon her reasonable factual conclusion that this case involved an overtaking or passing situation and not a crossing situation. We are particularly impressed by the trial court’s excellent reasons for judgment, wMch we hereby adopt as our own in extenso:
Plaintiff Chet Williams filed tMs smt against defendant Shell Oil Company to recover losses sustained in a boating accident on May 28, 1993 in the Atchafalaya Intra-coastal Waterway. Williams’ petition alleges that Shell’s crew boat, the M/V Mercedes, suddenly and without warning, entered the channel of the waterway in front of plaintiffs boat causing wakes and swells to engulf his skiff, sinking it. Plaintiff seeks personal injury and property damage, including loss of his sixteen foot skiff, motor, bait, diving costs for the recovery of the vessel, and lost profits.
Trial in the matter was held on August 15, 1994. Testifying on behalf of plaintiffs were the following: Dwayne Mayon, plaintiffs accountant; Curtis Landry and Todd Blanchard, crawfishermen; Ronald Overholtz, a Shell employee; Lawrence Funque and Jose Salvador, Brown and Root employees; Clinton Williams, brother of plaintiff; Emery Broussard, captain of the M/V Mercedes; and plaintiff Chet Williams. Testifying on behalf of defendants were Donny Lloyd, a Shell employee, and Denms Holt, defendant’s expert in the field of marine operations and vessel navigation.
FACTS
On May 28, 1993, Chet Williams, a craw-fisherman, arrived at the Adams Landing in the Intracoastal Waterway of the Atachafala-ya (sic) Basin floodway. He and Ms brother, Clinton Williams, put his sixteen foot skiff into the water. Chet and Clinton both testified that another |3skiff launched from the Adams Landing directly before them. Both skiffs headed up the waterway in the middle of the channel with the Williams skiff following 100 to 200 feet behind the lead skiff. Chet testified that as they passed the Shell dock, just minutes away from Adams Landing, he noticed a Shell crew boat away from the dock idling alongside the channel. The lead skiff went ahead of the Shell crew boat and Chet testified that since the Shell boat saw the lead skiff pass, he assumed that the Shell boat also saw his skiff approaching. As Chet continued to follow the lead skiff to pass the Shell boat, the Shell crew boat suddenly and without warrnng revved Ms engine and cut out in front of Ms skiff. Under cross-examination, Williams acknowledged a diagram of the location of the vessels, showing the skiff to the left and behind the Shell boat, the Shell boat parallel to the shore headed upstream. The sudden maneuver of the Shell boat caused wakes and swells wMch engulfed the skiff and immediately caused it to sink.
Clinton Williams testified that he was not paying close attention to the activities in the waterway immediately prior to the accident. He stated that he and his brother launched from the Adams Landing and followed another skiff up the waterway. The next thing he knew the boat capsized. When he surfaced, he saw a big boat going up the waterway away from them.
At the time of the accident, Curtis Landry and Todd Blanchard were laying crawfish traps across from the Shell dock. Landry testified that he looked up from Ms crawfish traps and saw a big splash and then two men pop up out of the water and grab onto a gas tank floating on the surface. He and his partner, Todd Blanchard, jumped into their skiff and went out into the channel to rescue the two men. Landry said that he did not see a wave hit the boat but he did see a Shell *384 boat headed up the channel immediately after the capsize. He assumed the Shell boat caused a wake which sank the Williams skiff. Todd Blanchard testified that he saw the skiff flip and sink and also noticed the Shell crew boat was headed up the channel. Blanchard, like Landry, assumed a wake had caused the skiff to sink.
At the time of the accident, Ronald Over-holtz, a Shell employee, and Lawrence Fun-que, a Brown & Root employee, were in the cabin of the Motor Vessel Verret, a Shell boat located at the Shell dock. They were both waiting to be taken out to their job site at the West Lake Verret Facility. Overholtz testified that he heard the noise of motor passing; the noise abruptly stopped. He immediately sensed that something was wrong. He went out the front door of the cabin and saw the back end of the skiff sticking up out of the water and then quickly sink. He then saw two men pop to the surface. He and Funque immediately began to untie their boat so that they could rescue the two men. Before they could leave the dock, they observed two other fishermen in a skiff pull the men to safety. Overholtz said that he did not notice the MW Mercedes at the dock when he arrived to board the MW Verret that morning. He also did not notice any boat going up |4channel towards the canal at the time of the capsize because he was keeping his eyes on the site of the sinking skiff. Overholtz believed the MW Verret must have already been on its way to the West Lake Verret facility to deposit workers. Overholtz stated that he believes the ride from the Shell dock to the West lake (sic) Verret Facility is approximately 10 minutes.
Funque, who arrived at the MW Verret before Overholtz, testified that the MW Mercedes was still at the dock when he arrived for work that morning. Funque went into the cabin of the MW Verret and three minutes later Overholtz arrived. They spoke for about three minutes and then heard a motor abruptly quit. Like Overholtz, he said that his eyes were only on the sinking boat and the men in the water so he did not notice any other boats in the waterway. Funque stated that it takes about 10-12 minutes to ride from the Shell dock to West Lake Verret Facility and it takes about 3-5 minutes from the dock to the canal turn-off.
Jose Salvador, a Brown and Root employee, was walking from the parking lot to the Shell dock at the moment of the accident. He heard a high pitch sound of a motor at full throttle. He looked up and saw the skiff splash and roll over. On direct examination, Salvador testified that he did not notice if there were any other boats in the canal at the time. He did notice several boats at the dock but the MW Mercedes was not there. On cross examination, he stated that he could see up river but did not see the MW Mercedes in the waterway. He did not see any waves or wakes to make the skiff flip.
The captain of the MW Mercedes, Emery Broussard, testified that he has been operating the crew boat for three years and transports crews to the West Lake Verret Facility. He testified that his normal procedure every morning is as follows: he departs the dock at 6:45 a.m.; he warms up the engine by idling the boat for approximately 100 yards to the right side of the waterway slightly past the Shell dock; he usually stays to the right of the waterway until he gets to the canal for the turn; he then cheeks to see that no other boats are coming and pushes the throttle forward for his left turn into the canal. On the morning in question, Brous-sard testified that as usual he idled to give the engine time to warm up. He noticed two skiffs approaching his boat from behind and to the left. He also noticed a third skiff back towards Adams Landing. He idled 500-600 yards, halfway to the canal turnoff, until the first two skiffs passed him, looked back and saw nothing and then “came on”. He said he never heard a skiff sound a horn. When he reached the canal, a minute to a minute and half later, he looked back, saw nothing and turned into canal.
Defendant’s first witness, Donny Lloyd testified that he was on the walkway leading to the Shell dock when he heard and saw a skiff travelling at high speed. He looked away and then heard a splash. He did not observe the MW Mercedes anywhere near the skiff.
IsDefendant’s expert, Dennis Holt, is an independent marine consultant and was qual *385 ified in court as an expert in marine operations and vessel navigation. Holt testified that the inland rules of the road provide that all vessels are considered underway if they are not secured. Even a boat which is idling is a vessel underway. In a passing situation, it is the responsibility of the vessel which is passing to signal the vessel which is being overtaken. The overtaken vessel must then return the signal to evidence its knowledge of the presence of the passing vessel. Holt stated that the skiff was attempting to pass the M/V Mercedes but did not signal to the Mercedes this intent. He opined that the M/V Mercedes did not violate any rules.
On cross examination, Holt was questioned about whether it was possible for the M/V Mercedes to have been in a crossing situation rather than a passing situation. Holt acknowledged that if it were a crossing situation, the M/V Mercedes would have had the responsibility to keep out of the way of ascending or descending vessels. He, however, felt that the testimony demonstrated that the M/V Mercedes and the skiff were not to the point where the canal turned off from the waterway and the captain of the M/V Mercedes testified that he was going up the waterway, not crossing the waterway.
In connection with the testimony of the witnesses, various drawings of the area were introduced into evidence. None contained measurements. It is apparent from all drawings that the West Lake Verret facility is located in a canal stemming off of the Atchaf-alaya Intracoastal Waterway, some distance above the Shell dock. After a review of all the testimony in this matter, considering the vantage points from which each witness observed the event, it is the opinion of this court that more probably than not, the following took place. The M/V Mercedes left the dock at a slow speed. After idling for a period of time, probably allowing for the passage of another crawfisherman, the captain revved up the motor to proceed up the waterway. He did not observe that the plaintiff’s skiff was near but it was, in fact, behind him. Particularly important to this conclusion is the testimony of the plaintiff Chet Williams, and his explanatory drawing which placed the Mercedes above the dock, parallel to the shore, and placed his skiff to the rear, left, and angled into the waterway. In view of this scenario, the court is next called upon to determine the relative duties of the two vessels.
DISCUSSION
Under the Inland Rules of the Road, a vessel is deemed by statute to be underway when it is not at anchor or made fast to the shore or aground. 38 U.S.C. Sec. 2003(h). Rule 13 of the Inland Rules of the Road provides that any vessel which is overtaking any other vessel shall keep out of the way of the vessel being overtaken. If there is any doubt, it shall be assumed that an overtaking is occurring. 33 U.S.C. Sec. 2013.
IsAn overtaking vessel is obligated to signal the overtaken vessel that an overtaking is occurring. The overtaken vessel is under no obligation or duty to keep a look out aft, but has the right to act on the presumption that the overtaking vessel will keep clear. Pinto v. M/S Fernwood, 507 F.2d 1327 (1st Cir. 1974); The Holly Park, 39 F.2d 572 (2d Cir.1930).
Finally, Rule 15 of the Inland Rules of the Road provides that a vessel crossing a river shall keep out of the way of vessels ascending or descending the river. 33 U.S.C. See. 2015.
The court must determine if the situation at hand was a crossing or an overtaking. After review of the testimony, the court finds that the M/V Mercedes, at the time of the incident, was not in a crossing situation but rather an overtaking. The testimony of Curtis Landry and Todd Blanchard, independent witnesses to the accident, and that of the plaintiff Chet Williams, all whom had view of placement of the boats, note that the incident occurred a short distance from the dock and a good distance before the turnoff into the canal. Furthermore, these three witnesses testified that they saw the M/V Mercedes head up river away from the skiff after the sinking — they did not testify that they saw the M/V Mercedes make a turning or crossing maneuver. Broussard, the captain of the M/V Mercedes, testified that he travels up the river and then turns left. He stated that he does not cross the river at an angle. *386 Since all the witnesses who saw the boat sink put the site of the sinking a long distance below the canal turnoff, it is not possible to deduce that Broussard was crossing his boat into the canal; he simply had not reached that point in the waterway.
The court is of the opinion that the Wilhams skiff was confidently following the lead skiff past the M/V Mercedes, believing that he would be seen. He did not follow his duty to sound his horn to make his presence known to the M/V Mercedes. The M/V Mercedes did not observe the skiff. The rules acknowledge the hazards inherent in this situation by placing the duty to observe and warn on the overtaking vessel. It was because of failure to follow these rules that his skiff was caught in the wake of the M/V Mercedes and capsized.
For the above reasons, the court finds in favor of defendant Shell Oil and against plaintiff Chet Williams, denying liability of the defendant. Costs of court are cast on the plaintiff.
A judgment to this effect will be signed upon submission.
St. Martinville, St. Martin Parish, Louisiana, this 2nd day of September, 1994.
/s/ ANNE LENNAN SIMON,
DISTRICT JUDGE
_j/The trial court signed a judgment conforming with these reasons on November 16, 1994. This appeal followed. The trial court’s findings of fact may not be set aside by an appellate court in the absence of manifest error or clear wrongness. In order to reverse a factual determination, we must find from the record that a reasonable factual basis for the finding does not exist and that the finding is clearly wrong. Stobart v. State, Through DOTD, 617 So.2d 880 (La. 1993). Where the testimony and evidence conflict and there exists two permissible views of the evidence, the appellate court should not disturb the factfinder’s determinations which are based on reasonable evaluations of credibility and reasonable inferences of fact. Rosell v. ESCO, 549 So.2d 840 (La. 1989). The issue which we must resolve is whether the trial court’s conclusion was a reasonable one. Stobart, 617 So.2d at 882.
The Louisiana Supreme Court in Ambrose v. New Orleans Police Ambulance Service, 93-3099, 93-3110, 93-3112 (La. 7/5/94); 639 So.2d 216 reiterated this standard of appellate review of facts. The supreme court stated, however, that “it was not our purpose in [Stobart v. State, Through DOTD ] to mandate that the trial court’s factual determinations cannot ever, or hardly ever, be upset.” Id. at 221. Citing the appellate court’s constitutional duty to review facts, the supreme court then reaffirmed the well settled principle that the appellate court should affirm the trial court judgment when it is not manifestly erroneous or clearly wrong.
In the case sub judice, plaintiff complains principally about the trial court’s application of law. We note, however, that the trial court’s application of law was based on the resolution of a factual question, to-wit: whether the situation involved a passing (overtaking) or a crossing. In other words, the particularly applicable law in this case is dependent on the factfinder’s conclusion with regard to whether a passing or a crossing occurred. After carefully reviewing the record, we conclude Rthat her determination that a passing situation existed was reasonable and, therefore, not manifestly erroneous.
Additionally, we find that the trial court’s application of solely 33 U.S.C. 2013 to this case was correct. Under the facts as determined by the trial court, this situation clearly involved an overtaking for which Williams had a duty to warn the captain of the M/V Mercedes. His failure to do so precludes his recovery.
For these reasons, the trial court’s judgment is affirmed. All costs of these proceedings are assessed to plaintiff-appellant, Chet Williams.
AFFIRMED.

. Williams originally named as defendant Shell Oil Company. This was done in error since the boat in question was owned by Shell Western E & P, Incorporated. Williams later filed a first supplemental and amending petition which apparently named the correct party-defendant. Although this supplemental and amending petition is not in the appellate record, the trial court's order allowing it to be filed is of record.